Case 16-21821-GLT    Doc 201    Filed 09/20/17    Entered 09/20/17 11:54:32    Desc Main
Document    Page 1 of 8

FILED
9/20/17 11:21 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 16-21821-GLT |
| | Chapter 7 |
| KDA GROUP, INC., | |
| *Debtor.* | |
| | |
| HERTZ GATEWAY CENTER, L.P., | Related to Dkt. No. 178 |
| *Movant,* | |
| v. | |
| KDA GROUP, INC., | |
| *Respondent.* | |

## MEMORANDUM OPINION

Counsel:   Donald R. Calaiaro for the Debtor, KDA Group, Inc.
Joseph P. Nigro for the Movant, Hertz Gateway Center, L.P.

Which came first: the lease rejection or the rental obligation? The Court welcomes this opportunity to resolve a bankruptcy permutation of the chicken-and-the-egg conundrum that has vexed curious minds throughout history. Hertz Gateway Center, L.P. seeks allowance of a chapter 11 administrative-expense claim for unpaid rent and other charges which came due under a lease for office space on August 1, 2016.[1] The Debtor, KDA Group, Inc., filed a motion to reject the lease, and the Court approved the rejection by an *Order* dated August 1, 2016.[2] This occurrence creates an apparent matter of first impression in this district: whether the order rejecting KDA's

---

[1]   See Movant's Motion for Allowance and Payment of Administrative Claim for Post Petition Rent, Dkt. No. 178.

[2]   Dkt. No. 48.

lease supersedes a rental obligation which accrued on the same day. The Court concludes that where a lease is rejected on the same day a rental obligation accrues, the rejection takes precedence and prevents the rental obligation from becoming an allowed administrative-expense claim under 11 U.S.C. § 365(d)(3).

### I.

KDA was an advertising agency that converted print media ads into digital marketing.[3] KDA entered into a lease with Hertz on September 8, 2010 for commercial office space located within the Gateway Center office complex in Pittsburgh, Pennsylvania. During the relevant period and on the first day of each month, KDA was obligated to pay $12,707.93 to Hertz under the lease, consisting of a monthly rental obligation of $11,591.12, an "installment pool" of $754.17, and a real-estate tax installment of $362.64.[4]

KDA shuttered the business and filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code on May 12, 2016 to pursue an orderly liquidation of its assets. KDA made no effort to address the lease until July 8, 2016, when it filed an omnibus motion seeking to reject various leases and executory contracts, including the lease with Hertz.[5] The Court granted the motion and issued a *Modified Default Order* on August 1, 2016 rejecting the lease.[6]

---

[3] Dkt. No. 46.

[4] Dkt. No. 178 at ¶¶ 1–2, 12. The installment pool included expenses for such things as "operating, managing, administering, equipping, securing, protecting, repairing, replacing, renewing, cleaning, maintaining, decorating, inspecting, and providing water, sewer and other energy and utilities to the Land, Building and Common Areas." [Pt. 4, Claim No. 15-1] at § 1.3(g). Each year, Hertz estimated the amount of additional expenses and taxes owed by the tenants, and KDA was responsible for paying 1.737% of the estimated fees in twelve monthly installments due on the first of the month. Id. at §§ 1.1(i), 4.2(a).

[5] Dkt. No. 34 at ¶ 13.

[6] Dkt. No. 48.

On June 21, 2017, Hertz filed a motion for the allowance and payment of the lease obligations which accrued in June, July, and August of 2016 as administrative-expense claims.[7] KDA opposed the motion and claimed it did not use the premises for business operations after the petition date.[8] The Court conducted a hearing on August 3, 2017 and determined that the June and July rental obligations were allowed administrative expenses under 11 U.S.C. §365(d)(3). It deferred a ruling on the remaining obligations while it considered Hertz's argument that *In re Appliance Store, Inc.*, 148 B.R. 226 (Bankr. W.D. Pa. 1992) mandated payment of the August rent as well.[9] The Court took the matter under advisement to review the relevant authorities.[10]

The Court has jurisdiction in this matter under 28 U.S.C. §§ 1334 and 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

## II.

Postpetition lease obligations may be allowed as an administrative claim under either 11 U.S.C. § 503(b)(1) or 11 U.S.C. § 365(d)(3).[11] To prevail under § 503(b)(1), a lessor must show the claims were "actual, necessary costs and expenses of preserving the estate," which means they "must benefit the estate as a whole."[12] A proceeding under § 365(d)(3), by comparison, can be much more expedient.[13] It avoids the more rigorous § 503(b)(1) analysis and instead

---

[7] Dkt. No. 178 at ¶ 12(a). Hertz has not requested an administrative claim for any "stub rent" that may be owed from the May 12, 2016 petition date through May 31, 2016.

[8] Dkt. No. 187 at ¶ 13.

[9] Dkt. No. 186.

[10] Dkt. No. 193.

[11] In re Goody's Family Clothing Inc., 610 F.3d 812, 816 (3d Cir. 2010) ("Put simply, § 365(d)(3) does not supplant or preempt § 503(b)(1).").

[12] Appliance Store, 148 B.R. at 234.

[13] 11 U.S.C. § 365(d)(3) provides, in pertinent part: "The trustee shall timely perform all the obligations of the

requires "the trustee to perform obligations as they become due under the terms of the lease" regardless of their benefit—or detriment—to the estate.[14] To qualify as an administrative expense under § 365(d)(3), the obligations must satisfy two temporal requirements. They must arise "from or after the order for relief," and the duty continues "until such lease is assumed or rejected[.]"[15]

Hertz is entitled to an allowed administrative claim for the June and July rent because these obligations clear both § 365(d)(3) hurdles. As obligations which came due on June 1 and July 1, the June and July rent certainly arose after the petition date and before the lease was rejected.

The August rent must be analyzed differently because it came due on the same date the lease was rejected.[16] The Court may also dispense with a § 503(b)(1) analysis because Hertz submitted no evidence to the record suggesting that KDA occupied the leased space on or after August 1.[17] Accordingly, Hertz has failed to meet the burden of proving its claim is entitled to treatment as an administrative expense under § 503(b)(1).[18]

Hertz claims the holding in *Appliance Store* supports its contention that rent which accrues on the rejection date is nonetheless allowable as administrative expense. The Court is not convinced. While *Appliance Store* suggests that a landlord is entitled to collect administrative rent

---

debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected."

[14]   In re Montgomery Ward Holding Corp., 268 F.3d 205, 207 (3d Cir. 2001).

[15]   11 U.S.C. § 365(d)(3).

[16]   Although the Third Circuit has not decided the issue of when a debtor's rejection becomes effective, this Court has adopted the view that court approval is a condition precedent to an effective lease rejection. See, e.g., In re National Record Mart, Inc., 272 B.R. 131, 133 (Bankr. W.D. Pa. 2002); In re Four Star Pizza, Inc., 135 B.R. 498, 501 (Bankr. W.D. Pa. 1992) ("The majority view appears to be better reasoned.").

[17]   Dkt. No. 178 at ¶ 10. Hertz admits that KDA "had unrestricted access to the suite and continued to occupy the premises . . . through the date of the rejection of [Hertz's] lease on August 1, 2016."

[18]   Goody's Family Clothing, 610 F.3d at 818 ("Proving this is the lessor's burden.").

through the date of the lease rejection,[19] it did not compel the debtor to pay rent for the entire month of September for a lease rejected on September 1.[20] To the contrary, a close reading of *Appliance Store* shows the only obligations in controversy were those which arose before the rejection date.[21] The Court must therefore look elsewhere for guidance on this issue.

Courts in this Circuit have considered timing questions in the context of § 365, though none have squarely addressed the present issue.[22] Without elaboration, at least one court required a debtor to satisfy lease obligations accruing on the same date the lease was rejected.[23] The case is distinguishable, however, because the rejection date was not determined by court order, but rather was the date the debtor vacated the premises.[24] It is also noteworthy that the landlord claimed only a daily rent of $41.10 for the March 1 rejection date and did not seek a recovery for the balance of the month.[25]

In the absence of specific authority on this matter, the Court turns to the widely accepted interpretation of § 365(d)(3), which describes the time at which a debtor's lease obligations may cease. While the "general rule [is the] party seeking relief in any court must bear

---

[19] Appliance Store, 148 B.R. at 232.

[20] Id. at 233.

[21] Id. at 229–30. The landlord's administrative claim consisted of amounts owed for the months of June, July, and August of 1992. Although the lease was rejected on September 1, 1992, there is nothing in the case to suggest landlord sought to recoup any rent for September of 1992.

[22] See, e.g., In re Garden Ridge Corp., 323 B.R. 136, 153 (Bkr. D. Del. 2005) (holding that a rental obligation maturing the first of the month that fell on Sunday the first was still a prepetition obligation where the debtor petitioned for chapter 11 relief on Monday the second, even though the debtor's time to fulfill the obligation was extended to Monday the second under state law). The implication of this holding is that the petition would have superseded the obligation if they had occurred the same day.

[23] Matter of Barrister of Del., Ltd., 49 B.R. 446, 447 (Bkr. D. Del. 1985).

[24] Id. at 446–47 ("The parties agree[d] that the lease was rejected on March 1.").

[25] Id. at 446.

5

the risk that the court may not reach a decision as quickly as the party expected or desired,"[26] the Court holds that where a rental obligation matures on the same day the underlying lease is rejected, the order supersedes the obligation to the extent the timing gives rise to a legal consequence. As the Third Circuit has stated, "when a lease of real property is rejected under § 365(d)(3), all sums due pre-rejection under the terms of that lease are owing."[27] Other courts have adopted this mantra and described the debtor's responsibilities under § 365(d)(3) as covering the entire "postpetition, prerejection" time period.[28] An obligation cannot be "pre-rejection" if it occurs the same day the rejection is ordered. To hold otherwise would give the lease priority over the Court's rejection order and provide undue deference to the landlord at the expense of the Debtor's estate.

Even if the rejection order did not take precedence, the Court had discretion to authorize the rejection of a lease retroactively under certain exceptional circumstances.[29] The Court's ability to provide retroactive relief derives from the use of its equitable powers under § 105 to further the purposes of § 365.[30] Although the Third Circuit has yet to endorse the concept

---

[26] Matter of Federated Dept. Stores, Inc., 131 B.R. 808, 815 (S.D. Ohio 1991).

[27] In re Fed.–Mogul Glob. Inc., 222 Fed. Appx. 196, 199 (3d Cir. Mar. 15, 2007) (citing Montgomery Ward, 268 F.3d at 209).

[28] See, e.g., HA-LO Indus., Inc. v. CenterPoint Props. Tr., 342 F.3d 794, 798 (7th Cir. 2003) ("Section 365(d)(3) provides that obligations under an unexpired lease that arise after an order for relief is entered . . . and prior to rejection of the lease . . . are to be timely fulfilled under the terms of the lease."); In re McCrory Corp., 210 B.R. 934, 936 (S.D.N.Y. 1997) ("§365(d)(3) requires debtor–tenants to provide landlords of nonresidential property full and timely payment for services due under an unexpired lease during the postpetition, prerejection period."); In re BH S&B Holdings LLC, 401 B.R. 96, 102 (Bankr. S.D.N.Y. 2009); In re NETtel Corp. 289 B.R. 486, 492 (Bankr. D.C. 2002) ("Section 365(d)(3) ought to be viewed as dealing with the obligations arising under the lease for the estate's right to use the property in the period after the petition and prior to rejection."); In re Papercraft Corp., 127 B.R. 346, 351 (Bankr. W.D. Pa. 1991).

[29] See In re At Home Corp., 392 F.3d 1064, 1072 (9th Cir. 2004); In re Thinking Machines Corp., 67 F.3d 1021, 1028 (1st Cir. 1995); In re Fleming Cos., Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("Rejection has been allowed nunc pro tunc to the date the Motion is filed or the premises is surrendered, whichever is later, only in certain circumstances.") (citing In re CCI Wireless, LLC, 278 B.R. 590, 595 (Bankr. D. Colo. 2002) ("[W]hen principles of equity so dictate, [a court] may approve a rejection of a nonresidential lease pursuant to [§] 365(a) retroactive to the motion filing date.")).

[30] In re Chi–Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004).

of a retroactive lease rejection, it also has not prohibited it.[31] Instead, many courts within the Third Circuit have adopted the notion that a lease may be retroactively rejected "when principles of equity so dictate."[32]

The Court was not asked to balance the equities in this case, however. KDA did not seek rejection of the lease retroactive to any particular date. As the master of its own filings, KDA controlled the date the rejection motion was filed and, by extension, the date the Court ultimately heard it. Accordingly, the issue before the Court is not whether equitable relief is appropriate, but rather whether the lease rejection supersedes the contemporaneous lease obligations as a matter of law. After considering the language of §365(d)(3), which requires the debtor to perform under an unexpired lease "until such lease is assumed or rejected," the Court finds that rent obligations which accrue on the rejection date cannot be allowed as an administrative expense under §365(d)(3). The Court concludes that rather than prejudicing Hertz, this holding simply denies it a windfall it was never intended to receive.

### III.

For the reasons set forth above, the entry of an order approving the rejection of an unexpired lease of nonresidential real property terminates the debtor's duty under § 365(d)(3) to satisfy postpetition lease obligations as they come due, including those obligations which arise on

---

[31] See Fed.–Mogul Glob., 222 Fed. Appx. at 201 (declining to "make a bright line rule" about whether nunc pro tunc relief is permissible in the context of lease modifications under 11 U.S.C. § 365(d)(5)).

[32] See, e.g., In re Phila. Newspapers, LLC, 424 B.R. 178, 184 (Bankr. E.D. Pa. 2010) ("[T]he decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations."); Chi–Chi's, 305 B.R. at 399 ("Moreover, the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a). Thus, only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease.") (internal citation omitted); see also Order Authorizing (i) Rejection of Certain Unexpired Leases of Real Property Effective Nunc pro Tunc to the Petition Date, (ii) Rejection of Certain Unexpired Leases of Real Property Nunc pro Tunc to May 31, 2017, and (iii) Abandonment of any Burdensome Property Located at Locations Covered by Such Unexpired Leases, In re rue21 Inc., No. 17-22045, Dkt. No. 531 at ¶ 2 (Bankr. W.D. Pa. June 13, 2017).

the rejection date. Hertz's *Motion for Allowance and Payment of Administrative Claim for Post Petition Rent* is **GRANTED IN PART** with respect to the June and July rental obligations and **DENIED IN PART** with respect to the August rental obligations.

A separate Order will issue.

Date: 9/20/2017

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to serve:
Debtor
Donald R. Calaiaro
Joseph P. Nigro
Chapter 7 trustee
US Trustee